1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10 | ANTHONY E. MACK,                    | CASE NO.     1:10-cv-00052-LJO-MJS (PC)

11 |            Plaintiff,               | ORDER DISMISSING COMPLAINT WITH
12 |                                     | LEAVE TO AMEND
     |      v.                            |
13 |                                     | (ECF No. 1)
     | A. FRAZIER, et al.,                |
14 |                                     | AMENDED COMPLAINT DUE WITHIN
     |            Defendants.             | THIRTY (30) DAYS
15

16 _____/

17

### SCREENING ORDER

18

19 **I.    PROCEDURAL HISTORY**

20        On January 11, 2010, Plaintiff Anthony E. Mack, a state prisoner proceeding pro se

21 and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No.

22 1.)  Plaintiff's Complaint is now before the Court for screening.

23 **II.   SCREENING REQUIREMENT**

24

25        The Court is required to screen complaints brought by prisoners seeking relief

26 against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

27

§ 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

## III.   SUMMARY OF COMPLAINT

The Complaint identifies the following individuals as Defendants: (1) A. Frazier; (2) M. Robinson; (3) B. Long; (4) Uribe; (5) V. Mclaughlin; (6) L.N. Dovey; (7) J. Walker; (8) Lt. Moreno; (9) D. Martinez; (10) W.J. Sullivan; (11) T. Steadman; (12) F. Gonzales; (13) M. Bryant; (14) E. Noyce; (15) M. Montano; (16) T. Peterson; (17) R. Redenius; (18) J.L. Petersen; (19) R. Wenciker, SHU Property Officer, California Correctional Institution; (20) Emmerson; (21) Allison; (22) B. Kearnes; (23) Sgt. Heildt; (24) Sgt. Mayo; (25) D. Morton; (26) D. Selvy; (27) R. Morrow; (28) K. Sampson; (29) C. Moats; (30) Papillion; (31) Cardenas; (32) Carrasco; (33) Lt. Ramos; (34) Redelsperger; (35) M. Yarbarough; and (36) John/Jane Does one through seven.

Plaintiff alleges the following:

2

While housed at Folsom State Prison ("Folsom"), Plaintiff initiated a civil action against unspecified officials at that facility and at Tehachapi State Prison ("Tehachapi"). On November 7, 2006, Plaintiff received summons and complaints to be served on defendants at Folsom. (Compl. at 3.)  On November 16, 2006 Lt. Moreno told Plaintiff that Warden Wadker and Captain Nies, along with other officials, had ordered Plaintiff transferred to Tehachapi. (Id. at 4.)  V. Mclaughlin and L.N. Dovey made an off the record agreement to effectuate the transfer.  "Plaintiff was not considered for transfer to Tehachapi SHU until the [summons and complaints materialized], thus the transfer resulted from Plaintiff engaging in a protected conduct by maintaining grievances and civil complaints."  (Id.)  The purpose of the transfer was to thwart service on the defendants of the civil action.  (Id. at 5.)  The transfer interfered with Plaintiff's prescribed medical treatment and violated regulations because Plaintiff was scheduled for a parole hearing in December.  (Id. at 4.)

At Tehachapi M. Robinson recognized Plaintiff as having had an altercation with Officer Knutson in 2001. (Id. at 4.)  Defendants Papillion, Robinson, Frazier, Long, and Cardenas then disseminated misinformation to inmates about Plaintiff committing prior acts of indecent exposure. (Id. at 5.)  Being labeled as such by these Defendants created a hostile unsafe environment with regard to fellow inmates.  (Id.)

"On December 15, 2006 the defendant L. Frazier incited and encouraged other prisoners to attack [Plaintiff] whenever possible by accusing [Plaintiff] under false pretext of exposing [himself] to her . . . ."  L. Frazier "call[ed] out and announce[d] several times over the tier that [Plaintiff] was a rapist and in prison for raping women.  Immediate threats of great bodily harm upon [Plaintiff] were made by various inmates . . . and set the stage

3

for future violence." (Id.)  Later that evening L. Frazier stated three times, loudly enough so as to garner a reaction from other inmates, that Plaintiff was a rapist.  Plaintiff filed an administrative appeal alleging misconduct on the part of Defendants Frazier, Long, Uribe, and Montano.  In retaliation for that appeal those Defendants falsely charged Plaintiff with a rules violation.  As a consequence of the rules violation, Plaintiff was moved into an "ice box punishment cell freezing cold with no heat on December 29, 2006." (Id. at 6.)

Upon arrival at Tehachapi Robinson confiscated Plaintiff's orthopedic shoes and sent them to Property Officer Wenciker, who refused to return them.  The shoes were never returned, "leaving [Plaintiff] in daily agony and pain." (Id. at 7.)

Defendants Heildt, B. Kearnes, and Allison confiscated Plaintiff's medically authorized knee brace in retaliation for administrative appeals filed by Plaintiff. (Id.)

On December 25, 2006 Defendant Emerson applied chemical agents to another black inmate in such quantities that Plaintiff also suffered exposure.  Plaintiff was unable to get fresh air or take a shower to mitigate the effects.  Plaintiff was left to choke and suffer chest pains along with breathing problems. (Id.)  On December 27, 2006, Plaintiff was still experiencing chest pain and palpitations from the chemical agents. (Id. at 7, 8.) The following day Plaintiff filed an inmate grievance. (Id. at 7.)  On December 29, 2006 Emerson and D. Martinez transferred all of the black prisoners who complained about the incident.  While Plaintiff was collecting his property D. Martinez loudly and repeatedly identified Plaintiff as a rapist.  Defendants Uribe, D. Martinez, Emerson, and Redenius made preparations for Plaintiff to be placed in a defective corner cell.  It was snowing and temperatures were freezing, but the cell had no heat and the walls, ceiling, and floor stayed wet because of the unregulated temperature.  Plaintiff notified Lieutenant Bryant, Sergeant

4

Noyce, and Captain Steadman that the cell was unfit for human habitation; Plaintiff was left in the cell for one month.  The cell placement was retaliation for Plaintiff filing grievances. (Id. at 8.)

On or about February 14, 2007 Defendants Carrasco and Gonsalez imposed a ten month Secure Housing Unit ("SHU") term in retaliation for Plaintiff exercising his right to file grievances.  (Id. at 9.)

From November 16, 2006 to March 1, 2007, Defendants Peterson and R. Redenius denied Plaintiff law library access and destroyed the complaints and summons that Plaintiff intended to serve at Folsom.  (Id. at 9.)  Their actions were in retaliation for Plaintiff filing grievances.

Plaintiff was transferred from Tehachapi to Corcoran State Prison ("Corcoran") on March 1, 2007 by Defendants Gonzales, Lt. Ramos, and Sgt. Mayo in retaliation for Plaintiff exercising his right to file grievances.  (Id. at 9, 10.)

Defendants W.L. Sullivan, Carrasco, Gonzales, T. Steadman, Bryant, Noyce, Wenciker, Redelsperger, Redenius, Peterson, and Robinson conspired to deprive Plaintiff of his property without due process.  (Id. at 10.)  Property Officer Wenciker is required to make a detailed account of each inmate's belongings.  (Id. at 12.)  When Wenciker catalogued Plaintiff's property, Plaintiff noticed that not everything was accounted for and so would not sign the property slip produced by Wenciker.  (Id. at 13.)  Plaintiff wrote to various prison officials including Wenciker.  Defendant Wenciker responded to Plaintiff on January 19, 2007 informing Plaintiff that his property had been disposed of.  Prison policy requires inmates to make arrangements for property not claimed on the property slip.  (Id. at 12.)  On January 17, 2007 Plaintiff had filed the necessary paperwork to claim his

5

property.  (Id. at 13.)  The Defendants allege that the paperwork was not received until after the property was destroyed.  (Id. at 14.)

On March 1, 2007 Plaintiff was informed that he was being transferred to another prison.  Plaintiff asked Sgt. Doe to check Wenciker's property room for his missing belongings.  Plaintiff's belongings were still there, but Lt. Bryant refused to allow Plaintiff to retrieve his property.  (Id.)  Plaintiff later received correspondence from M. Carrasco, F. Gonzales, W.J. Sullivan, Wenciker, T. Steadman, and M. Yarbarough regarding the property dispute.  The Defendants made various false statements in an attempt to cover up the fact that the Defendants stole Plaintiff's property to sell for profit.  (Id. 15, 16.)

Defendants C. Moats and John/Jane Does 1 through 7 had access to Plaintiff's financial accounts by virtue of their positions as Business Manager and trust accounting staff, respectively.  These Defendants accessed Plaintiff's account after his March 1, 2007 transfer and created false debit charges in order to embezzle Plaintiff's money.  (Id. at 21.)

Plaintiff asserts that the aforementioned conduct violated constitutional rights afforded to him under the First, Eighth, and Fourteenth Amendments.  He also alleges violations of 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations Act (RICO)) and makes a claim for emotional distress pursuant to Section 51 of the California Civil Code.

IV.   **ANALYSIS**

A.   **Section 1983**

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and

(2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

### B.    Proper Joinder of Multiple Claims And Defendants

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or as alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Rule 18(a) allows multiple claims against a single party.  However, naming multiple defendants is limited by the requirement of Federal Rule of Civil Procedure 20(a)(2) that the right to relief arise out of common events and contain common questions of law or fact.

Plaintiff asserts an unusually large number of constitutional violations.  He attempts to sue at least forty-two defendants.  The alleged violations took place at two separate prisons over a period of four months.  The claims stem from ten separate events: (1) Plaintiff's transfer from Folsom to Tehachapi, (2) Plaintiff being identified as a sexual deviant, (3) confiscation of Plaintiff's orthopedic shoe, (4) confiscation of Plaintiff's knee brace, (5) use of excessive force (pepper spray) against Plaintiff, (6) Plaintiff's ten month SHU term, (7) denial of law library access and destruction of legal materials, (8) Plaintiff's transfer from Tehachapi to Corcoran, (9) deprivation of Plaintiff's personal property, and (10) embezzlement from Plaintiff's prisoner account.  There is no single event alleged to have  brought about these various claims.  Nothing suggests how they might otherwise be related.

Plaintiff characterizes the majority of the alleged violations as retaliation for his exercises of First Amendment protected conduct.  However, the fact that claims are premised on the same type of constitutional violation(s) against multiple defendants does not make them factually related.  Claims are related when they are based on the same precipitating event or on a series of related events caused by the same precipitating event.  Unrelated claims involving multiple defendants belong in different suits. See George, 507 F.3d at 607.

As  alleged, Plaintiff's claims are unrelated and not cognizable.  The Court will grant Plaintiff an opportunity to amend.  To state a cognizable claim, Plaintiff must plead facts

demonstrating how his claims are related or he must file a separate complaint for each unrelated claim against different defendants.  If Plaintiff files an amended complaint that does not comply with Rules 18(a) and 20(a)(2), all unrelated claims and defendants will be subject to dismissal.

The following sections of this order will notify Plaintiff of legal standards that may be applicable to his various claims.

## C.   Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).   The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Iqbal, 129 S.Ct. at 1948.  Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions.  Id. at 1948.  In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### D.   John Doe

"John Doe" defendant liability must also be properly alleged.  A plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," so that each numbered John Doe refers to a different specific person.  Plaintiff also must identify how each such named Defendant, including those named as Doe, is liable for a constitutional violation. Dempsey v. Schwarzenegger, 2010 WL 1445460, *2 (N.D. Cal. Apr. 9, 2010); Schrubb v. Tilton, 2009 WL 3334874, *2 (N.D. Cal. Oct. 14, 2009).

In his amended complaint, Plaintiff shall either name the defendants involved or list the Doe defendants involved and describe what each did to violate his rights.  If Plaintiff can only list these defendants as John Doe, Plaintiff should allege specific acts that each Doe defendant did, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y."  Alexander v. Tilton, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

### E.   First Amendment

#### 1.   Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

In order to state a claim, Plaintiff must allege specific facts demonstrating that a Defendant took an adverse act because of Plaintiff's First Amendment activity.  Plaintiff's protected conduct must have been a "'substantial' or 'motivating' factor behind the defendant's conduct."  Brodheim, 584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)).  The adverse action must not have reasonably advanced a legitimate correctional goal.  A facility transfer in retaliation for the exercise of First Amendment rights is sufficiently adverse "despite the fact that prisoners generally have no constitutionally-protected liberty interest in being held at, or remaining at, a given facility."  Pratt, 65 F.3d at 806.

2.    Access to Courts

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009).  "Under the First Amendment, a prisoner has both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."  Silva, 658 F.3d at 1101-02.

The right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds v. Smith, 430 U.S. 817, 828 (1977); see also Madrid v. Gomez, 190 F.3d 990, 995 (9th Cir. 1999).  The right, however, "guarantees no particular methodology but rather the conferral of a

11

capability - the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts . . . . [It is this capability] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. Lewis, 518 U .S. at 356-57. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351.

Plaintiff also has a right to litigate without interference in pursuit of legal redress for claims that have a reasonable basis in law or facts. Silva, 658 F.3d at 1103.

To establish a violation of the right of access to the court, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349 (1996). Claims for denial of access to court may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that can not now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412–415 (2002). The plaintiff must show (1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; (2) the official acts frustrating the litigation; and, in the case of a backward-looking claim, (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Id. at 414–15.

The right to litigation assistance is limited to the tools prisoners need "in order to attack their sentences, [either] directly or collaterally, and in order to challenge the conditions of their confinement." Lewis, 518 U.S. at 355. The right to legal assistance is also limited to the pleading stage. Silva, 658 F.3d at 1102. The right to litigate without

interference applies to all civil actions in court that have a reasonable basis in law or fact and extends beyond the pleading stage. Id. at 1102-3 (citations and quotations ommitted).

## F.   **Eighth Amendment**

### 1.   Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan,

465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"The Eighth Amendment guarantees adequate heating." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). "One measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses 'a substantial risk of serious harm.'" Graves v. Arpaio, 623 F.3d 1043, 1049 (9th Cir. 2010) (citations omitted).

Plaintiff must also allege deliberate indifference. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

2.      Inadequate Medical

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds,

WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### 3.    Excessive Force

The Cruel and Unusual Punishments Clause of the Eighth Amendment protects prisoners from the use of excessive physical force. Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with "the objective component being contextual and responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7) (quotation marks omitted).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9-

10) (quotations marks omitted).  In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (quotation marks and citations omitted).

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it.  Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency.  Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 9) (quotation marks omitted).  Thus, it is the use of force rather than the resulting injury which ultimately counts.  Id. at 1178.

## G.   Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

### 1.   Facility Transfer

Prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another.  Meachum v. Fano, 427 U.S. 215, 224-25 (1976); see also Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983).  A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution.  See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985).

2.     Property

Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).   An authorized, intentional deprivation of property is actionable under the Due Process Clause; see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), however, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available,"  Hudson, 468 U.S. at 533.

Plaintiff has an adequate post-deprivation remedy under California law and therefore, he may not pursue a due process claim arising out of the wrongful confiscation of his personal property in contravention of prison regulations.  Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

**H.     RICO**

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–1968 allows a private citizen to sue to recover treble damages for injury "by reason of a violation of section 1962", which prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity or through the collection of an unlawful debt.  18 U.S.C. § 1962.  A violation of section 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).  Furthermore, the plaintiff must actually be injured by the conduct which purportedly violates 18 U.S.C. § 1962.  Sedima, 473 U.S. at 496.

**V.     CONCLUSION AND ORDER**

17

Plaintiff's Complaint does not state a claim for relief under section 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his Complaint, filed January 11, 2010;

2.    Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;

3.    Plaintiff shall file an amended complaint within thirty (30) days; and

4.    If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.


IT IS SO ORDERED.

Dated:    January 30, 2013            /s/ *Michael J. Seng*
                                UNITED STATES MAGISTRATE JUDGE

19